[No. 36587-8-I.    Division One.    September 30, 1996.]
DANIEL E. PUGEL, *Appellant*, v. MELVILLE MONHEIMER, ET AL., *Respondents.*

*Thomas J. Greenan* and *Ferguson & Burdell*, for appellant.

*David H. Olsell,* for respondents.

BECKER, J. — Daniel Pugel sued his former attorney, Melville Monheimer, for negligently failing to file a complaint before the statute of limitations expired. The underlying action—and hence this action, too—involves property damage that occurred when a neighbor's excava-

tion project removed lateral support for Pugel's real property. Reversing the trial court, we hold that Pugel is entitled to damages for both the reasonable and necessary restoration costs *and* the diminution in value remaining after the restoration.

Pugel owns an apartment building in Seattle. His neighbor began excavation of an adjoining downhill lot, but failed to provide adequate lateral support for the Pugel property. The Pugel property began to settle; cracks appeared in the sidewalks and in the structure itself. The City declared Pugel's property to be potentially hazardous, and ordered him to fix it.

Pugel made repairs, then hired attorney Melville Monheimer to sue the neighboring property owner and the neighbor's engineer. Monheimer filed suit against the neighbor and reached a settlement of $99,250. Monheimer prepared a complaint against the engineer, but failed to file it before the statute of limitations expired. Pugel retained new counsel and filed this action against Monheimer for negligent legal representation.

Pugel won a summary judgment on the issue of negligence. At a bench trial on damages, the trial court found that reasonable and necessary restoration costs totaled $88,813.53. Pugel presented the testimony of an expert witness that the property, even after the repair of the physical damage, had lost market value because of the effect that the damages and repairs would have on the perceptions of potential buyers in earthquake-conscious Seattle. Relying on this testimony, the court further found that $120,500 of permanent depreciation remained "after repairs had been made to restore the property to its prior condition."

Pugel requested that both figures be added together for a damage award of $209,313.53 ($88,813.53 + $120,500). Monheimer argued that Pugel's recovery should be limited to the cost of restoration ($88,513.53) because the building had been completely repaired. The trial court rejected

both arguments, and instead limited Pugel's damages to $120,500, concluding that "the proper measure of damages is the cost of restoration to the property or the permanent diminution of value to the property, whichever is the greater." After offsetting the $99,250 paid by the neighbor, and another $21,250 owing to Monheimer for his representation of Pugel against the neighbor ($120,500 – $99,250 – $21,250 = $0), the court entered no judgment and dismissed the action with prejudice.

■■ The sole question presented by Pugel's appeal is whether the measure of damage to real property can include both the cost of restoration and any remaining diminution in the value of the property.

The answer is yes. *Grant v. Leith*,[1] decided by the Washington Supreme Court in 1965, controls. The facts of *Grant* are analogous; property damage to the plaintiff's "Parcel A" occurred when a neighbor removed lateral support. After the slide, repairs were made to the dwelling and lateral support to the parcel was fully restored. An appraiser upon whom the trial court relied found there remained "permanent, irreparable damage and depreciation" to property in the amount of $5,600.[2] The Supreme Court affirmed an award of damages for both the restoration costs and the remaining depreciation.[3]

The Supreme Court followed *Grant* in 1967 in *Olson v. King County*.[4] In *Olson*, an embankment washed out in a heavy rain due to negligent construction of a culvert. The washout cast soil and debris upon Olson's property, threatened buildings and improvements, and undermined the driveway. Olson requested an award of damages both for repair costs and for permanent reduction in property value. He testified that his property value had diminished by $8,000 as the result of the inundation, of which he clas-

---

[1] *Grant v. Leith*, 67 Wn.2d 234, 407 P.2d 157 (1965).

[2] *Grant*, 67 Wn.2d at 237.

[3] *Grant*, 67 Wn.2d at 237.

[4] *Olson v. King County*, 71 Wn.2d 279, 293-95, 428 P.2d 562 (1967).

sified $3,000 as repairable damage for such items as removing the debris and installing pipe and tile to protect the property. The trial court awarded $5,500. The Supreme Court affirmed this award as within the range of the evidence, holding that the trial court was entitled to consider the "claimed depreciation in value of his property over and above the cost of restoration and repairs."[5]

The court noted that where the damage to real property is temporary, restoration cost is the usual measure of damages, along with loss of use. The court cited *Grant v. Leith* as an example of the uncommon case where the evidence shows a depreciation in the value of real property over and above the cost of restoration. "It is only in the event that the diminution in value exceeds the cost of restoration that it becomes important as an additional item of damages."[6]

We have said before that "damages are not precluded simply because they fail to fit some precise formula" for measuring them.[7] In making any compensatory award, the court should use a measure of damage that makes the injured party as whole as possible without conferring a windfall.[8] Where the injury to property is permanent, the usual measure of damages is the difference between the value of the land before the injury and immediately after; where the injury is not permanent and the premises can be restored to their original condition, the usual measure of damage is restoration costs and loss of use.[9] These two distinct measures of damage are alternatives; an award of both would be a windfall. But Pugel did not attempt to establish the difference in the market value of his property before and after the injury. He established the loss of mar-

---

[5]*Olson*, 71 Wn.2d at 294.

[6]*Olson*, 71 Wn.2d at 293.

[7]*Massey v. Tube Art Display, Inc.*, 15 Wn. App. 782, 791, 551 P.2d 1387 (1976).

[8]*See Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 543-44, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994).

[9]*Harkoff v. Whatcom County*, 40 Wn.2d 147, 152, 241 P.2d 932 (1952).

ket value remaining after he had shored up the building and repaired cracks. The trial court's award of damages, in limiting Pugel to this remaining loss of value while omitting his out-of-pocket repair expenses altogether, did not make him whole. He is entitled to an award that combines the two.

Limiting Pugel to the cost of restoration alone, as Monheimer requests, would also have been inadequate in these circumstances. Restoration costs are an appropriate measure when the damage to real property is temporary.[10] But according to the trial court's unchallenged findings of fact, the withdrawal of lateral support caused a loss of market value in Pugel's property that was permanent, not temporary.

■ Monheimer attempted to challenge the court's findings of fact. He did not file his cross-appeal on time, and this court dismissed it. Monheimer nevertheless, in violation of RAP 2.4(a), submitted a brief assigning error and making various claims for affirmative relief. Pugel then included in his reply brief a response to Monheimer's claims for affirmative relief. While it might have been more efficient for Pugel to move to strike the respondent's brief, unquestionably Monheimer's violation of the rules caused more work for Pugel. Accordingly, an award of attorney fees is appropriate under RAP 18.9.

The judgment is reversed. The trial court is directed to enter judgment in favor of Pugel in the amount of $88,813.53 ($209,313.53 total damages, *less* $99,250 recovered from neighbor, *less* $21,250 owing in attorney fees, *equals* $88,813.53). Subject to compliance with RAP 18.1(d), Pugel is awarded reasonable attorney fees incurred in responding to Monheimer's claims of affirmative relief.

---

[10]*Harkoff*, 40 Wn.2d at 152; *Pepper*, 73 Wn. App. at 541 (citing *Burr v. Clark*, 30 Wn.2d 149, 158, 190 P.2d 769 (1948)).

COLEMAN and AGID, JJ., concur.

Review denied at 131 Wn.2d 1024 (1997).