IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DUANE YOUNG, an individual, and all those similarly situated, | ) ) ) | No. 35842-9-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| TOYOTA MOTOR SALES, U.S.A., a California corporation, | ) ) ) ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Duane Young's negligent misrepresentation and Consumer

Protection Act[1] (CPA) claims against Toyota Motor Sales were dismissed following a

bench trial. He appeals dismissal of the CPA claim, challenging the trial court's legal

conclusions. Because the trial court's factual findings support its conclusion that Mr.

Young failed to carry his burden of proof on at least two elements of his claim, we

affirm.

---

[1] Washington's Consumer Protection Act is codified at chapter 19.86 RCW.

FACTS AND PROCEDURAL BACKGROUND

In December 2013, several months after purchasing a 2014 model year Toyota Tacoma truck from a dealer in Burlington, Washington, Duane Young received a letter from Toyota. The letter stated it had recently come to Toyota's attention that the Monroney label[2] on the vehicle he purchased might have indicated that an outside temperature gauge was included in the vehicle's rearview mirror. As the letter disclosed, that feature was not available on any 2014 model Tacoma. The letter apologized for the mistake and any confusion it might have caused. It offered to compensate Mr. Young with a cash reimbursement of $100.

In January 2014, Mr. Young communicated with a customer service representative for Toyota named Jeffrey Moore, expressing his dissatisfaction with the reimbursement offer. By the end of January, Mr. Moore had offered to install a rearview mirror with an outside temperature gauge as an aftermarket part, but because it would not be factory-installed, the three-year 36,000 mile warranty on many of the truck's other parts would not apply. Still dissatisfied, Mr. Young contacted an attorney, after which Toyota offered to pay him $500 to resolve his complaints. He declined the offer.

---

[2] "A Monroney label, or a window sticker . . . is a label that is required in the United States to be displayed on all new vehicles, and it includes certain official information; for example, standard equipment, optional equipment, crash test ratings, fuel economy info., and a manufacturer's suggested retail price." Report of Proceedings at 251.

Arbitration proceedings with Toyota led to an award of a buyback by Toyota for over $27,000. Mr. Young rejected the buyback because he thought he could sell the truck for more. He was right; he eventually sold the truck for $30,500.

In May 2015, Mr. Young filed the lawsuit below. He sought to pursue it as a class action and asserted claims of common law fraud, negligent misrepresentation, and for violation of the CPA. The trial court denied class certification.

Toyota moved for summary judgment on all of Mr. Young's claims; he responded with a cross motion for summary judgment on his CPA claim. In ruling on the motions, the trial court dismissed the fraud claim but declined to grant either party's motions on the negligent misrepresentation and CPA claims, which proceeded to a bench trial.

Trial

At the bench trial, Mr. Young testified that the outdoor temperature gauge was an important feature to him and he was misled into believing it would be included in the limited package by a Monroney label and by the "Build-a-Tacoma" feature on Toyota's website. The "Build-a-Tacoma" feature enables a consumer to select the features of the truck he or she is interested in purchasing.

In the defense case, Toyota called as a witness its distribution pricing administrator, who testified that in early September 2013, an audit of the Monroney label for the 2014 model Tacoma with the limited package revealed that it erroneously

3

identified the truck's rearview mirror as including an outside temperature gauge.[3] The

2013 model Tacoma had included such a temperature gauge, but it had been removed

from the limited package for the 2014 model. Toyota presented evidence that in pricing

the 2014 limited package the cost of that feature was removed, so purchasers of the

limited package never paid for it. It also presented evidence that the cost of the feature

was $10.

The pricing administrator testified that the date on which Toyota first started

wholesaling 2014 model Tacomas to dealers was September 4, 2013, so catching the

error in the early September audit enabled it to substitute correct labels on most of the

2014 limited package models before they were shipped to dealers. In mid-October 2013,

however, Toyota employees realized there might be vehicles in the field that had been

shipped with incorrect Monroney labels. The pricing administrator testified that on

October 22, 2013, she notified field offices of the possibility of incorrect labels, and that

corrected labels would be available to print at their field offices the next day. The e-mail

directed the field office to send the corrected Monroney labels to dealers in their region.

---

[3] Employees also discovered that the limited package had been described as
having a postage-stamp size monitor for its backup camera in the rearview mirror. The
monitor had been moved to the dashboard and enlarged. Mr. Young concedes that this
was an improvement.

The general manager for Toyota's Customer Experience Center testified that she learned in late October 2013 that incorrect information about the temperature gauge had been entered into the "Build-a-Tacoma" program on Toyota's website. She testified that the "Build-a-Tacoma" website information was corrected in early November 2013.

Toyota presented evidence that a total of 59 2014 model Tacomas with the limited package were sold in the state of Washington, and only three were sold before Toyota realized there was a mistake with the Monroney label. Of the remaining 56 trucks, 41 were sold after January 30, 2014 (roughly three months after the mistake had been corrected) and 31 were sold after May 1, 2014 (roughly six months after the mistake had been corrected).

Toyota's witnesses testified that letters like the one Mr. Young received in December 2013 were sent to 147 individuals that it identified as the only consumers who possibly purchased the limited package after seeing misleading information. There was no evidence presented that anyone other than Mr. Young claimed to have been misled.

At the conclusion of the bench trial, the court took the matter under advisement, issuing a lengthy and detailed memorandum decision three months later. It found "at least seven areas" where it "question[ed] Mr. Young's credibility." Clerk's Papers (CP) at 411. It concluded that Mr. Young had not proved either of his two remaining claims and directed Toyota's counsel to prepare formal findings and conclusions.

The findings and conclusions thereafter presented and entered incorporated all of the factual findings articulated in the court's memorandum decision. They concluded that Mr. Young failed to carry his burden of proving multiple elements of both of his claims. Mr. Young appeals.

ANALYSIS

Following a bench trial, appellate review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* We defer to the trial court's determinations of the weight and credibility of the evidence. *Mueller v. Wells*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016).

Unchallenged findings are verities on appeal, *see id.*, and Mr. Young does not dispute the trial court's extensive findings. "Thus, the only question is if the unchallenged facts support the trial court's conclusions of law." *Id.* Mr. Young's appeal challenges only the trial court's dismissal of his CPA claim.[4]

---

[4] We recognize that Mr. Young's request for relief in his briefing to this court is for an unqualified reversal. His assignments of error and legal argument fail to address his negligent misrepresentation claim, however. We will not review its dismissal. *See* RAP 10.3(a)(4) and (6) (required content of an opening brief).

In a private cause of action, the CPA requires a plaintiff to prove five elements:

"(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3)

affecting the public interest, (4) injury to a person's business or property, and (5)

causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885

(2009); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

Wn.2d 778, 780, 719 P.2d 531 (1986). "Failure to satisfy even one of the elements is

fatal to a CPA claim." *Sorrel v. Eagle Healthcenter, Inc.*, 110 Wn. App. 290, 298, 38

P.3d 1024 (2002). The trial court concluded that Mr. Young's proof of the CPA claim

fell short of his burden in five respects. It is sufficient on appeal for us to address

whether he proved the first and fifth elements of the claim.

*Element One: An unfair or deceptive act or practice*

The CPA does not define "unfair or deceptive act or practice." "To show a party

has engaged in an unfair or deceptive act or practice a 'plaintiff need not show that the

act in question was intended to deceive, but that the alleged act had the capacity to

deceive a substantial portion of the public.'" *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24,

30, 948 P.2d 816, (1997) (quoting *Hangman Ridge*, 105 Wn.2d at 785). "Implicit in the

definition of 'deceptive' is the understanding that the actor misrepresented something of

material importance." *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959

P.2d 1158 (1998) (emphasis omitted), *rev'd in part on other grounds*, 138 Wn.2d 248,

978 P.2d 505 (1999). "Deception exists, 'if there is a representation, omission or practice

that is likely to mislead' a reasonable consumer." *Panag*, 166 Wn.2d at 50 (quoting *Sw.*

*Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)).

The "material importance" and "reasonable consumer" standards are consistent

with decisions of federal courts and final orders of the Federal Trade Commission (FTC)

interpreting provisions of the Federal Trade Commission Act dealing with the same or

similar matters, as intended by the Washington Legislature. *See* RCW 19.86.920.[5] In a

1983 report to a congressional committee on the FTC's enforcement policy against

deceptive acts or practices, the FTC provided its view of the meaning of "deceptive acts

or practices" under both sections 5 and 12 of the FTC Act.[6] *See Cliffdale Assocs*., 103

F.T.C. 110, app. at 174-84 (1984) (Letter from James C. Miller III, FTC Chairman, to the

Honorable John D. Dingell, Chairman, U.S. House Comm. on Energy & Commerce

(October 14, 1983)). Courts have summarized the Commission's view as prohibiting

practices that are "likely to mislead consumers acting reasonably under the circumstances

. . . in a way that is material." *Fed. Trade Comm'n v. Cyberspace.com LLC*, 453 F.3d

1196, 1199 (9th Cir. 2006) (citing *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 950 (9th

---

[5] RCW 19.86.920 declares that the purpose of the CPA "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition" and declares "the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters."

[6] 15 U.S.C. §§ 45, 52.

Cir. 2001) (citing, in turn, *Fed. Trade Comm'n v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994)); *Corder v. Ford Motor Co.*, 285 F. App'x 226, 228 (6th Cir. 2008); *and see Kraft, Inc. v. Fed. Trade Comm'n*, 970 F.2d 311, 314 (7th Cir. 1992); *Cliffdale Assocs.*, 103 F.T.C. 110, at 164-66.

The FTC has summarized its approach to the requirement of materiality as follows:

> The basic question is whether the act or practice is likely to affect the consumer's conduct or decision with regard to a product or service. If so, the practice is material, and consumer injury is likely, because consumers are likely to have chosen differently but for the deception. In many instances, materiality, and hence injury, can be presumed from the nature of the practice. In other instances, evidence of materiality may be necessary.

*Cliffdale Assocs.*, 103 F.T.C. 110, app. at 175-76.

"A claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). Mr. Young primarily contends that Toyota's "false advertising" had the capacity to deceive a substantial portion of the public. Appellant's Br. at 3. He argues alternatively that it was per se unfair or deceptive conduct under chapter 46.70 RCW, which regulates automobile manufacturers and dealers. *Id.*

9

*Capacity to deceive substantial portions of the public.* The court found that "there is no question that there was a mistake both in Toyota's online Build-a-Tacoma feature, and possibly in as many as 147 Monroney labels for 2014 Tacomas with a limited package that were shipped around the United States." CP at 408. But it found that Mr. Young failed to demonstrate that Toyota's mistake was a matter of material importance and therefore deceptive, or that it had the capacity to deceive a substantial portion of the public.

We need address only materiality to affirm the court's conclusion that Mr. Young failed to prove a deceptive act or practice. The trial court's unchallenged finding was that the temperature gauge represented $10 in value, as compared to the $7,525 cost of the 2014 model limited package. It also made the unchallenged finding that because the temperature gauge was never intended to be a feature of the limited package, it was not included in pricing the package, so no purchaser of the package ever paid for it. This unchallenged evidence establishes that Toyota's error was financially immaterial.

Mr. Young did not present credible evidence that Toyota's error was material for any nonfinancial reason. Having weighed Mr. Young's credibility, the court rejected his assertion that he, personally, was induced by the mistake to buy the limited package. Mr. Young presented no evidence that the mistake would have been material to others.

A similar failure to present evidence caused this court to affirm summary judgment dismissal of a CPA claim in *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664,

676, 288 P.3d 48 (2012). Mr. Brummett sued the Washington Lottery and its outside advertising agency, contending (among other claims) that the agency's false advertisement that tickets being offered in a special raffle were "going fast" violated the CPA. *Id.* at 672. He alleged that the advertisements would have induced the public to purchase tickets, but as this court observed, "[H]e did not, however, support this assertion with evidence that he would produce if he defeated summary judgment and went to trial." *Id.* at 676.[7] In affirming dismissal of his CPA claim, this court stated that the agency's "'going fast' statements could not be categorized as misrepresenting something of material importance." *Id.* at 678.

The trial court's findings support its conclusion that Mr. Young failed to prove Toyota's error was of material importance, and thereby failed to prove it was deceptive.

*Per se unfair or deceptive conduct.* Alternatively, Mr. Young argues that the trial court erred in concluding that he failed to prove a per se violation, based on Toyota's alleged violation of chapter 46.70 RCW. Shortly after *Hangman Ridge* was decided, the legislature declared that "[a]ny violation of [chapter 46.70] is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW." LAWS OF 1986, ch. 241, § 23,

---

[7] Materiality was relevant to two of Mr. Brummett's claims: a fraud claim and the CPA claim. The immateriality of the "going fast" statements was discussed first in connection with his fraud claim, *see Brummett*, 171 Wn. App. at 675-76, with a reference back when the court held that for CPA purposes, the statements did not misrepresent something of material importance.

codified at RCW 46.70.310.  Demonstration of a violation of the chapter therefore

satisfies the first two elements of a CPA claim.

Mr. Young relies specifically on RCW 46.70.180(1).  It provides that it is

unlawful to disseminate in any manner "any statement or representation with regard to

the sale, lease, or financing of a vehicle which is false, deceptive, or misleading,"

"including" a list of five actionable statements or misrepresentations, all of which deal

with sale, lease, or financing terms.  The trial court construed the language "with regard

to the sale, lease, or financing of a vehicle" as language of limitation and concluded that

Toyota's temperature gauge error was not a statement or representation dealing with sale,

lease, or financing terms.  Mr. Young argues that this construes the provision too

narrowly.[8]

The language relied on by the court and the maxim of ejusdem generis as applied

to the five nonexclusive examples provide support for the trial court's construction of

RCW 46.70.180(1).  But we need not construe the statute because we hold that a

materiality requirement inheres in the provision, just as it inheres in the CPA and in

---

[8] The trial court also relied on the fact that a claim under RCW 46.70.180(1)—which has a one-year statute of limitations—would be time-barred, and on a couple of federal district court decisions holding that it therefore could not be the basis of a per se CPA claim.  The only precedential Washington decision addressing the issue came to the opposite conclusion.  *Walker v. Wenatchee Valley Truck & Auto Outlet, Inc.*, 155 Wn. App. 199, 209-10, 229 P.3d 871 (2010) (a per se CPA claim is governed by the CPA's own four-year statute of limitations).

sections 5 and 12 of the FTC Act. We can affirm a trial court judgment on any basis within the pleadings and proof. *Gosney v. Fireman's Fund Ins. Co.*, 3 Wn. App. 2d 828, 877, 419 P.3d 447, *review denied*, 191Wn.2d 1017 (2018) (citing *Wendle v. Farrow*, 102 Wn.2d 380, 382, 686 P.2d 480 (1984)).

Provisions of chapter 46.70 RCW support this construction. Its declaration of purpose states that the chapter was enacted "in order to prevent frauds, impositions, and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." RCW 46.70.005. Immaterial errors are not frauds, impositions, or abuses. And RCW 46.70.220 provides that the chapter "shall be considered in conjunction with chapter[ ] . . . 19.86," with the powers and duties of the State as they may appear in that chapter "shall apply against all persons subject to this chapter."

As earlier discussed, Toyota's mistake was found to be financially immaterial because purchasers of the limited package were never charged for the $10 temperature gauge. We will not presume that a $10 part for which the consumer was not charged was material to purchase of the $7,525 model 2014 limited package. The trial court found that Mr. Young presented no credible evidence that the temperature gauge error was material to him, and no evidence whatsoever that it was material to other consumers.

Here again, because Mr. Young failed to prove Toyota's error was of material importance, he failed to prove that it constituted a violation of RCW 46.70.180(1).

*Element Five: Causation*

A CPA plaintiff may only recover for injury to his or her business or property that was proximately caused by a defendant's unfair or deceptive practices. *Panag*, 166 Wn.2d at 63-64. The injury "need not be great" and no monetary damages need be proven. *Mason v. Mortg. America, Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

The causation element is satisfied if the plaintiff demonstrates that a misrepresentation of fact led him to choose the defendant's product. *Mayer v. Sto Industries, Inc.*, 123 Wn. App. 443, 458, 98 P.3d 116 (2004), *aff'd in part, rev'd in part on other grounds*, 156 Wn.2d 677, 132 P.3d 115 (2006). In his reply brief, Mr. Young argues that this was the nature of his injury. But after weighing the evidence, the court "c[ould] not conclude, more probably than not, that Mr. Young's reliance on a mistaken website is the proximate cause of his decision to purchase the Toyota Tacoma Limited Package, and, therefore, caused him damages." CP at 419. Factual findings of the trial court that support this conclusion are unchallenged. We do not reweigh the evidence or determine credibility.

During the bench trial, Mr. Young argued that investigative expenses he incurred also qualify as recoverable injury. Expenses incurred to pursue a CPA claim do not

constitute injury, although an injury to business or property that is proximately caused by the deceptive act itself is compensable. *Panag*, 166 Wn.2d at 62 (comparing *Demopolis v. Galvin*, 57 Wn. App. 47, 786 P.2d 804 (1990) (litigation expenses incurred to institute CPA counterclaim does not constitute injury), with *Sign–O–Lite Signs, Inc. v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992) (loss of business profits resulting from time spent embroiled in disputing improper payment demand constitutes injury)).

The trial court made an unchallenged finding that Mr. Young did not do anything about the missing temperature gauge until he received the December 2013 letter from Toyota notifying him of its mistake and offering a $100 cash reimbursement. A further unchallenged finding was that the conduct the court found credible "[was] much more consistent with someone who learned that Toyota had made a mistake and wanted to take advantage of it, than someone who relied upon that item in good faith." CP at 415. Based on the trial court's findings, which are supported by the evidence, the investigation performed by Mr. Young was proximately caused by his receipt of Toyota's truthful December 2013 letter, not by its earlier mistake.

Mr. Young's failure to prove any injury to business or property proximately caused by Toyota's mistake provided an additional basis for the trial court's dismissal of his CPA claim.

No. 35842-9-III
*Young v. Toyota Motor Sales*

Affirmed.

_____
Siddoway, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

16

No. 35842-9-III

FEARING, J. (concurring) — I write separately to express some disagreement with the majority opinion.

The majority attaches a requirement of materiality to element one of a Consumer Protection Act claim, chapter 19.86 RCW, the element of an unfair or deceptive act or practice. I question the validity of appending an element of materiality to this first component of a Consumer Protection Act suit. Nevertheless, I assume, consistent with the majority opinion, that the Washington Supreme Court, based on federal law, will add the materiality component to the unfair or deceptive act or practice element, at least to a claim not involving a per se violation of the act.

The majority adds a materiality requirement to the unfair or deceptive act or practice element based on this court's decisions in *Brummett v. Washington's Lottery*, 171 Wn. App. 664, 676, 288 P.3d 48 (2012) and *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), *rev'd in part on other grounds*, 138 Wn.2d 248, 978 P.2d 505 (1999). The *Brummett* court cited *Stephens v. Omni Insurance Co.*, 138 Wn. App. 151, 166, 159 P.3d 10 (2007), *aff'd, sub nom. Panag v. Farmers Insurance*

1

*Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885 (2009) for the proposition that implicit in whether an act is "deceptive" is the understanding that the actor misrepresented something of material importance. James Brummett asserted a Consumer Protection Act claim against the advertising firm Cole & Weber, not against the government agency administering the state lottery. This court summarily dismissed one allegation based on the Consumer Protection Act against the advertising agency not because of any misrepresentation lacking materiality but because Cole & Weber did not create the alleged false advertisement aired by the lottery. Without any analysis, this court summarily affirmed the second allegation of a false advertisement because of lack of materiality. *Stephens v. Omni Insurance Co.*, 138 Wn. App. at 166 cited *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. at 730, for the rule that implicit in the term "deceptive" is the understanding that the actor misrepresented something of material importance. Nevertheless, the *Stephens* court did not base its decision on a lack of materiality.

*Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. at 730 cites *Potter v. Wilbur-Ellis*, 62 Wn. App. 318, 327, 814 P.2d 670 (1991) for the proposition that implicit in the definition of "deceptive" is the understanding that the actor misrepresented something of material importance. The *Hiner* court did not base its decision on the lack of materiality.

In *Potter v. Wilbur-Ellis*, this court held that a seller of goods may commit an unfair or deceptive act or practice when failing to disclose a material fact that renders the

2

No. 35842-9-III
*Young v. Toyota Motor Sales*

goods less desirable. *Potter* involved the nondisclosure of a feature of the product, not an affirmative representation. A nondisclosure of information creates significantly different concerns and questions than an affirmative misrepresentation, since the seller of a product has no obligation to disclose numerous features or facts concerning the product.

I agree with the majority that Washington State often looks to federal law when construing the Consumer Protection Act. RCW 19.86.290. I further agree with the majority that federal law consistently and materially imposes the concept of materiality to the notion of an unfair or deceptive act or practice. *Federal Trade Commission v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *Kraft, Inc. v. Federal Trade Commission*, 970 F.2d 311, 314 (7th Cir. 1992); *Cliffdale Associates*, 103 F.T.C. 110, 164-66 (1984). Thus, I would expect our state Supreme Court to follow the federal courts and add materiality to either the first element of a Consumer Protection Act action or add a sixth element to the consumer's claim.

I question whether the courts should graft a constituent of materiality to the element of unfair or deceptive act or practice. The words "unfair" or "deceptive" do not necessarily connote important, relevant, or material statements or conduct. Some people cannot help themselves from repeatedly acting and speaking deceptively even when their conduct and speech lacks materiality.

As noted by the majority, in addition to showing a material unfair or deceptive act or practice to establish the first element of the Consumer Protection Act action, the

3

claimant may fulfill the first element by showing per se unfair or deceptive conduct. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The claimant may establish a per se act by proving a violation of a statutory scheme declared by the legislature to affect the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d at 780. One such legislative enactment is the auto dealers practices act, chapter 46.70 RCW. RCW 46.70.310.

RCW 46.70.180, a portion of the auto dealers practices act, reads in relevant part:

> Each of the following acts or practices is unlawful:
> (1) To cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading, including but not limited to the following:
> . . . .
> (2)(a)(i) To incorporate within the terms of any purchase and sale or lease agreement any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading, including but not limited to terms that include as an added cost to the selling price or capitalized cost of a vehicle an amount for licensing or transfer of title of that vehicle which is not actually due to the state, unless such amount has in fact been paid by the dealer prior to such sale.

None of the language in RCW 46.70.180 requires that a false statement by an auto dealer be material to be actionable. I compliment Toyota Motor Sales for its conduct after misrepresenting the presence of a temperature gauge on the rearview mirror. Nevertheless, I conclude that Toyota Motor Sales violated the statute and committed a

4

No. 35842-9-III
*Young v. Toyota Motor Sales*

per se violation of the Consumer Protection Act by placing the false statement in its Monroney label and its website.

A lack of materiality will generally preclude recovery under the Consumer Protection Act because of the act's fourth and fifth elements of injury and causation. If the absence of materiality always prevents a finding of injury or causation, my concurrence lacks any practical importance. But then adding materiality as an element also serves no function.

Although I cannot fathom any occasion, there may be an occasion or two when immateriality will not otherwise preclude fulfillment of causation and damages. Thus, I disagree with creating an aftermarket "materiality" accessory to the unfair or deceptive act or practice element. In Duane Young's appeal, I would affirm the trial court's dismissal of Young's Consumer Protection Act cause of action based on findings supported by substantial evidence that any misrepresentation and, in turn, any unfair or deceptive act or practice by Toyota Motor Sales did not cause Young any damage.

I CONCUR:

_Fearing, J._

_____
Fearing, J.

5