IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ABOLFAZL HOSSEINZADEH,<br><br>      Appellant / Cross-Respondent,<br><br>      v.<br><br>SWEDISH HEALTH SERVICES, a Washington non-profit organization; GURJEET SIDHU, aka GURJEET K SIDHU, aka GURJEET KAUR SIDHU, aka GURJEET SIDHU, aka Dr. SIDHU, individually; JAKE HARLEY CHOINIERE, aka JAKE H. CHOINIERE, aka JAKE CHOINIERE, aka Dr. JAKE, individually; and UNKNOWN JOHN and JANE DOES,<br><br>      Respondents / Cross-Appellants. | No. 85474-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Abolfazl Hosseinzadeh received care from behavioral health providers associated with Swedish Health Services ("Swedish"), including Gurjeet Sidhu and Dr. Jake Choiniere, over the course of several months in 2019. Subsequently, defendants in a separate lawsuit filed by Hosseinzadeh subpoenaed Sidhu and Choiniere for depositions to discuss Hosseinzadeh's treatment. After Hosseinzadeh gave his consent, Sidhu and Choiniere were both deposed. Hosseinzadeh then filed this suit against Swedish, Sidhu, and Choiniere (collectively, "Providers") asserting claims of medical malpractice, defamation, and false light as well as claims of violation of privacy, unlicensed practice, fraud, and violations of the Washington Consumer Protection Act

(CPA), chapter 19.86 RCW. Providers jointly filed a motion for summary judgment dismissing Hosseinzadeh's claims, which the court granted. Hosseinzadeh appeals. Providers cross-appeal the trial court's denial of attorney fees and costs. We affirm both the trial court's dismissal of Hosseinzadeh's claims and its denial of Providers' motion for attorney fees and costs. We deny the Providers fees on appeal but award costs.

FACTS

Abolfazl Hosseinzadeh was referred to counseling by his primary care physician in June 2019 to treat symptoms of depression and anxiety that he suffered as a result of alleged discriminatory and defamatory conduct by individuals in his condominium association and ensuing litigation that he initiated (HOA lawsuit). On June 17, 2019, Hosseinzadeh began the first of five counseling sessions with Gurjeet Sidhu. Sidhu is a licensed marriage and family therapist (LMFT) who was employed by Swedish at the time. Sidhu's progress notes for Hosseinzadeh's initial visit state that she explained the role of a behavioral health provider (BHP) to him. Sidhu's notes throughout the course of Hosseinzadeh's five visits describe his symptoms, his discussion of the HOA lawsuit, changes in his behavior, and recommendations for treatment. At their final session on July 29, 2019, Sidhu recommended that Hosseinzadeh see a psychiatrist, and he agreed.

Subsequently, on August 28, 2019, Hosseinzadeh attended one session with Dr. Jake Choiniere, a licensed psychiatrist. Choiniere's clinical notes included Hosseinzadeh's medical history, surgical history, psychiatric history,

2

family history, social history, and substance use history, as well as the results of a physical exam and a mental status exam. Under the heading "Diagnoses," Choiniere listed "unspecified depression" and "unspecified anxiety" and stated, "Psychiatric differential diagnosis includes: Major depression with psychotic features, mixed episode of bipolar disorder, generalized anxiety disorder, PTSD." Choiniere recommended that Hosseinzadeh consider "antidepressant treatment augmented with an atypical antipsychotic" medication which "may be helpful for sleep and borderline psychotic perceptions," along with "intensive psychotherapy, specifically cognitive behavioral therapy or acceptance commitment therapy." Choiniere's notes indicate that Hosseinzadeh was "quite reluctant to consider medication treatment, although [he was] open to the notion of psychological counseling."

Nearly a year after these treatment sessions, in May 2020, defendants in his HOA lawsuit sought to depose Sidhu and Choiniere. At the time of their respective depositions, neither Sidhu nor Choiniere had received written authorization or consent from Hosseinzadeh to discuss his personal health information. As a result, Sidhu and Choiniere refused to testify. In September 2020, the HOA lawsuit defendants again subpoenaed Sidhu and Choiniere for depositions. This time Hosseinzadeh provided Sidhu and Choiniere with signed authorization forms and stipulated to a protective order regarding their discussion of his medical records. Accordingly, at their respective depositions, Sidhu and Choiniere answered questions about their treatment of Hosseinzadeh.

3

On July 28, 2022, Hosseinzadeh filed a complaint in King County Superior Court against Providers, alleging claims of medical malpractice, false light,[1] and defamation. Hosseinzadeh also filed claims against Sidhu and Swedish for violation of privacy, unlicensed practice, fraud, and violation of the CPA.

On March 8, 2023, Providers filed a joint motion for summary judgment seeking dismissal of all claims against them and attorney fees and expenses pursuant to RCW 4.84.185. In support of his opposition to the motion, Hosseinzadeh submitted his own declaration and declarations by friends and family members, including his wife, Dr. Romelia Perez.

On April 19, 2023, the trial court granted Providers' motion for summary judgment. In its order, the trial court stated that along with other evidence, it considered all declarations submitted by Hosseinzadeh, with "particular focus . . . given to the declarations of Drs. Pinales and Perez, who concluded there was negligence without providing any facts to support their conclusions." The trial court elaborated that "neither Drs. Pinales or Perez offered the required standard of care testimony which would be applicable to a Washington Hospital[,] LMFT or Psychiatrist." The order did not specifically address or provide any additional reasoning regarding any other claim.

Hosseinzadeh filed a motion for sanctions against Providers, alleging that they intentionally lied to the court, made false statements of material fact, and violated his rights and court rules. The trial court denied the motion for sanctions as well as Hosseinzadeh's motion for reconsideration of the denial.

---

[1] For this claim only, Hosseinzadeh asserts that Swedish was vicariously liable for Choiniere's and Sidhu's action.

On May 1, 2023, Hosseinzadeh filed a motion for reconsideration of the order granting Providers' summary judgment motion, asserting that (1) Providers improperly served him by e-mail and untimely served him by mail and (2) genuine issues of material fact existed based on his "unopposed" declarations, Providers' admission that Sidhu was not a licensed psychologist, and Providers' failure to depose his witnesses. The trial court denied the motion for reconsideration on May 22, 2023.

## DISCUSSION

Hosseinzadeh appeals the trial court's decision granting summary judgment and dismissing all of his claims.[2] Providers filed a cross-appeal of the trial court's decision to deny attorney fees and expenses for opposing a frivolous lawsuit.[3] Providers also seek attorney fees on appeal.

I.      Dismissal of Hosseinzadeh's Claims on Summary Judgment

Hosseinzadeh challenges the trial court's grant of summary judgment on four grounds. First, he claims his experts' declarations created a genuine issue of material fact regarding the standard of care for an LMFT, psychiatrist, and hospital in Washington state as well as regarding whether Providers breached that standard, as required for his medical negligence claim. Second, Hosseinzadeh asserts that his fraud claim is not foreclosed by RCW 7.70,

---

[2] In his notice of appeal, Hosseinzadeh also sought review of the court's denial of his motion for reconsideration of the order granting summary judgment, but he failed to assign error to that order. Hosseinzadeh's brief on appeal also challenges the denial of the motion for sanctions. However, he failed to attach the relevant order to the notice of appeal and also failed to assign error to the decision or provide argument in his opening brief. Accordingly, we decline to review the trial court's denial of his motion for sanctions.

[3] Respondent Sidhu filed a brief and cross-appeal, and Respondents Swedish and Choiniere filed a "Joinder to Reply Brief of Respondent and Cross-Appellant Gurjeet Sidhu."

because it was not related to health care. Third, he claims that the record evidence establishes questions of fact on his CPA claim, including as to whether Providers' conduct was based on entrepreneurial activities, was of public interest, and resulted in injury to business or property. And fourth, Hosseinzadeh claims his unlicensed practice, defamation, false light, and violation of privacy claims are not barred by RCW 7.70.

On appeal, we review orders granting summary judgment de novo and consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We may affirm a summary judgment order on any basis that is supported by the record. Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" exists when such facts impact the outcome of the litigation. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

A party that moves for summary judgment has the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A defendant moving for summary judgment can submit affidavits to demonstrate that no issue of material fact exists or can demonstrate to the trial court that the "plaintiff lacks competent evidence to support an essential element of [their] case." Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 23, 851 P.2d 689 (1993). When the moving party is the

6

defendant and the defendant-movant satisfies the initial burden, the burden then shifts to the plaintiff. Young, 112 Wn.2d at 225. The plaintiff must sufficiently demonstrate "the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Id. The failure to make such a showing will result in the trial court granting summary judgment. Id.

A.      Medical Malpractice Claim

In his complaint, Hosseinzadeh alleged that Providers breached the relevant standard of care for healthcare providers by (1) misdiagnosing him; (2) failing to account for relevant criteria such as his background; (3) failing to advise him as to alternative diagnoses and treatment plans; (4) failing to conduct the proper tests; (5) presenting Sidhu as a licensed psychologist;[4] and (6) failing to correct errors pertaining to his diagnosis, medical records, and treatment plans, such that his health and safety were threatened. Providers sought summary judgment on the basis that Dr. Perez and Dr. Pinales[5] are not qualified to establish the standards of care for an LMFT or Washington hospital, and their declarations failed either to establish the relevant standards of care or to state how Providers breached such standards.

To prevail in a medical malpractice claim, a complainant must prove that (a) the health care provider's treatment or conduct failed to comport with the

---

[4] Specifically, in his complaint, Hosseinzadeh alleges that "Swedish refused to schedule an appointment for Plaintiff to see a psychiatrist despite a recommendation," and "Swedish . . . owed a duty to Plaintiff, yet failed to provide services and activities and failed to operate, own, manage, control and/or administer the facilities in a manner that enable[d] Plaintiff [to] maintain the highest practicable health, mental, and psychosocial well-being."

[5] Although Providers focus on Dr. Perez and Dr. Pinales, the record also includes a declaration from Dr. Cesar Acosta. As Dr. Acosta's declaration is substantively the same as Dr. Perez's and Dr. Pinales' declarations, the analysis of their declarations also applies to his.

applicable standard of care and (b) the failure to do so was the proximate cause of the complainant's injury. RCW 7.70.040(1). The standard of care applicable to a health care provider in Washington is that of a "reasonably prudent health care provider at that time in the profession or class to which [they] belong[], in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1)(a). Both the standard of care and proximate cause elements for medical malpractice claims must be established through expert medical testimony. Keck, 184 Wn.2d at 370.

Providers assert that even assuming Dr. Perez or Dr. Pinales were appropriately qualified,[6] they failed to articulate the standard of care applicable to each respective Respondent. In response, Hosseinzadeh argues that Dr. Perez's and Dr. Pinales's declarations established the standard of care applicable for developing treatment plans and for diagnosing a patient with delusional disorder, pointing to these statements:[7]

> In my professional opinion, it is negligent to diagnose a patient with delusional disorder without reviewing patient's chart, without understanding patient's culture and background, without ruling out

---

[6] Washington law requires that an expert testifying in a medical malpractice case "must demonstrate that [they have] sufficient expertise in the relevant specialty." Young, 112 Wn.2d at 229 (explaining that a pharmacist is not competent to testify as to a prescribing physician's standard of care regarding medication used for treatment); see also Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 229 n.1, 393 P.3d 776 (2017) (emphasizing that "only physicians may testify as to another physician's standard of care"). In his reply brief, Hosseinzadeh appears to acknowledge that Dr. Pinales is not qualified to establish the standard of care for an LMFT, psychiatrist, or hospital, though he maintains that Dr. Perez, a psychiatrist, was qualified to discuss the standard of care for a LMFT in Washington because both professions "treat[] patients with mental health issues." Because we conclude Hosseinzadeh's experts' testimony is deficient on other grounds, we need not address Providers' argument that Dr. Pinales and Dr. Perez are not qualified to establish the relevant standards of care.

[7] Dr. Perez's and Dr. Pinales's opinions set out in their declarations are largely similar and duplicative of each other and include nearly all of the same arguments or observations. As the same language appears in both declarations but in differently numbered paragraphs, the paragraph numbers are omitted here for simplicity.

other diagnoses, and without performing a comprehensive psychiatric diagnostic evaluation. . . .

In my professional opinion, a treatment plan in mental health must be based on consideration of a patient's symptoms, the intensity and duration of the symptoms, the etiology of the symptoms, the Patient's cultural background, the Patient's educational and professional background, the Patient's family structure, the Patient's medical history, and the impact of the symptoms on the patient's functional ability.

However, despite stating that these are their "professional opinions," the doctors' declarations do not identify a specific standard of care.

Nor do the expert declarations address how any Providers' actions or omissions breached an applicable standard of care. Hosseinzadeh contends that these portions of Dr. Perez's and Dr. Pinales's declarations establish Sidhu's breach of the relevant standard of care:

In my professional opinion, Ms. Gurjeet Sidhu diagnosed Dr. Hosseinzadeh with delusional disorder based on her poor clinical judgment, her own cultural bias, her lack of knowledge and understanding of the ongoing scientific research and projects in medicine and cryonics, her inability to comprehend the possibility that some individuals discriminated and defamed Dr. Hosseinzadeh, and her own fabricated version of Dr. Hosseinzadeh's background and symptoms. . . .

In my professional opinion, Ms. Gurjeet Sidhu failed to consider Dr. Hosseinzadeh's etiology of his symptoms, background, culture, and medical history in her treatment plan for Dr. Hosseinzadeh.

The declarations also opine as to other allegedly negligent acts:

In my professional opinion, Ms. Gurjeet Sidhu misdiagnosed Dr. Hosseinzadeh with delusional disorder.

In my professional opinion, Ms. Gurjeet Sidhu and Mr. Jake Choiniere cannot both be correct when one diagnosed Dr. Hosseinzadeh with delusional disorder and the other does not within a short period of time. . . .

9

> In my professional opinion, it is improper, poor clinical judgment, and negligent to enter [the] word "bipolar" in Dr. Hosseinzadeh's medical records when he has never had the history or symptoms, diagnosis of bipolar disorder.
>
> In my professional opinion, it is improper, poor clinical judgment, and negligent to enter word "impairment reality testing", "borderline psychotic symptoms", or "psychotic" in Dr. Hosseinzadeh's medical records because his consideration for cryonics and because he has never had the history or symptoms of psychosis. . . .
>
> In my professional and personal opinion, the health providers have fabricated symptoms and diagnosis which their negligence resulted in misdiagnose and defamation of Dr. Hosseinzadeh.
> . . .
> In my professional opinion, it is improper, poor clinical judgment, and negligent to diagnose Dr. Hosseinzadeh with delusional disorder based on his interest [in] cryogenics scientific research and projects.
>
> In my professional opinion, it is improper, poor clinical judgment, and negligent to diagnose Dr. Hosseinzadeh with delusional disorder because he complained about being discriminated and defamed by some individuals in a condominium committee.
>
> In my professional opinion, it is improper, poor clinical judgment, and negligent for a mental health provider to diagnose a patient with delusional disorder based on the provider's personal beliefs and culture, based on the provider's lack of scientific knowledge, or based on lack of understanding of the patient's culture, background, or medical history.

As for Choiniere, Dr. Perez's declaration fails to identify any specific act constituting a breach. As for Sidhu, the declarations lack information as to how any specific acts breached the standard of care for an LMFT. More is required to defeat summary judgment.

For example, in Keck, the expert identified the standard of care by averring that a reasonable doctor would have addressed the plaintiff's problems after surgery for sleep apnea by referring her to another qualified doctor for

10

treatment. 184 Wn.2d at 371-72. Further, the expert's affidavit identified a breach of that standard of care by opining that the defendant surgeons sent the plaintiff to a general dentist, who would not have had the training or knowledge to deal with her specific postsurgery problems. Id. at 372. Thus, the expert's affidavit was sufficient to defeat summary judgment. Id. By contrast, in Guile, an expert affidavit was held to be insufficient to defeat summary judgment where it described the plaintiff's injuries and opined, "All of this was caused by faulty technique on the part of the first surgeon. . . . In my opinion he failed to exercise that degree of care, skill, and learning expected of a reasonably prudent surgeon at that time in the State of Washington . . . ." 70 Wn. App. at 26. The court in Guile concluded this affidavit lacked adequate factual support because it "was "merely a summarization of [the plaintiff's] postsurgical complications, coupled with the unsupported conclusion that the complications were caused by [the defendant physician's] 'faulty technique.' " Id. at 26, 27.

Here, the experts' affidavits are like those in Guile. They lack specificity about the applicable standard of care for an LMFT, psychiatrist, and hospital in Washington. They also fail to connect acts or omissions of the Providers to the applicable standards of care. Consequently, there is no genuine issue of material fact as to Hosseinzadeh's medical malpractice claims.

B.      Fraud Claim

Hosseinzadeh alleges that Swedish and Sidhu committed fraud against him by presenting Sidhu as a licensed psychologist despite knowing she did not possess that license. Further, he alleges that Sidhu defrauded him and the court

at her deposition by providing false licensing and credential information and "hiding" information pertaining to her credentials and the cause of his depressive symptoms. And he claims that Swedish and Sidhu concealed material facts to "induce [him] to take or refrain from taking some action . . . to hide the ongoing danger and threat to [his] health and safety."

A claim of fraud requires the following:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

Adams v. King County, 164 Wn.2d 640, 662, 192 P.3d 891 (2008) (citing Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996)).

Hosseinzadeh's declaration states that "Sidhu did not say that she was not a psychologist, instead, she presented herself as [a] psychologist. My medical records show [the] title of psychologist in front of Sidhu's name. . . .The Washington Department of Health does not show that Sidhu has a psychologist or physician license." Hosseinzadeh's after visit summary (AVS) report for June 17, 2019 lists Sidhu as a "Mental Health Specialist," and the AVS reports for Hosseinzadeh's other four visits identify Sidhu as a "Gurjeet K. Sidhu, PsyD." In the progress notes section of the AVS report, the field "Author" states "Gurjeet K. Sidhu, PsyD"; the field "Author Type" states "Psychologist"; and the field "Editor" states "Gurjeet K. Sidhu, PsyD (Psychologist)." A Swedish CR 30(b)(6) corporate representative explained that in Swedish's electronic medical records system, "Epic," a provider's profile includes a title, which is based on their

education, so a Psy.D degree will populate as "Psychologist." The Swedish representative also explained that Sidhu was hired as a psychotherapist, which broadly authorized her to conduct assessments on behavior and recommend pharmaceutical intervention not limited to family or marital issues. The record evidence shows that Sidhu was hired as a psychotherapist and her scope of practice as an LMFT included evaluating patients in the behavioral health clinic and providing diagnoses. There is no evidence that either Swedish or Sidhu falsely represented to Hosseinzadeh that Sidhu was a psychologist, or that they did so with knowledge of its falsity or with intent that Hosseinzadeh act on this information.

Moreover, Hosseinzadeh does not provide any evidence that he had a right to rely on the truth of any such representation or that he relied on a false representation to his detriment. To the contrary, he stated in his deposition that he "had no idea Sidhu has done to me until she went through the deposition." Thus, the record evidence does not create a genuine issue of material fact as to his reliance on Sidhu's being a licensed psychologist.

Similarly, as to Sidhu's allegedly false statements at her deposition, Hosseinzadeh does not identify evidence creating a question of fact as to how he relied on the truth of any false representation or how such reliance caused him damage. Hosseinzadeh's declaration states only that "Sidhu made false statements about me and my medical background," "made false statements on my behalf about past and ongoing concepts and research on cryonics, reanimation . . . and other scientific works in medical fields that I thought she

13

understood," and "made false statements about my health and background that damaged my standing in the Hosseinzadeh v. Bellevue Park, et al. [case]." These conclusory statements are insufficient to satisfy his burden at summary judgment. Moreover, these claims are based on Sidhu's statements at her deposition and are barred by the litigation privilege doctrine.[8]

Hosseinzadeh fails to identify specific evidence or provide argument as to how the record evidence establishes each element of fraud.[9] Therefore, the trial court properly dismissed Hosseinzadeh's fraud claim.

C.      CPA Claim

Hosseinzadeh alleges that Swedish and Sidhu misled him to believe that Sidhu was a licensed psychologist and that this misrepresentation caused injury to his health in violation of the CPA. A party seeking to recover in a private CPA action "must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). A plaintiff alleging injury under the CPA must establish all five elements. Id. Providers argue that Hosseinzadeh's CPA claim fails because he did not establish the third or fourth elements.

---

[8] The litigation privilege doctrine "protects participants [in litigation] – including attorneys, parties, and witnesses." Young v. Rayan, 27 Wn. App. 2d 500, 508, 533 P.3d 123, review denied, 2 Wn.3d 1008, 539 P.3d 4 (2023). The privilege provides witnesses with "absolute[] immun[ity] from suit based on their testimony." Bruce v. Byrne-Stevens & Assocs. Engineers, Inc., 113 Wn.2d 123, 125, 776 P.2d 666 (1989).

[9] Further, as Providers point out, Hosseinzadeh failed to include a reference to the record for each factual statement. RAP 10.3(a)(5); M.G. by Priscilla G. v. Yakima Sch. Dist. No. 7, 2 Wn.3d 786, 803, 544 P.3d 460 (2024) (clarifying that RAP 10.3(a)(5) applies to merits briefs of the appellant and respondent).

As to the third element, public interest impact, Hosseinzadeh argues that the alleged misrepresentations about Swedish's staff are likely to harm others. However, as noted above, Sidhu is associated with the title "Psychologist" only within the Swedish medical records system, Epic. No evidence in the summary judgment record indicates that Sidhu's, or any other provider's, qualifications or license are misrepresented to the public. In his reply brief, Hosseinzadeh argues that Sidhu "is listed on the HealthPoint website [which lists Swedish's providers] as being a PsyD," and that "listing of a provider with a specific designation leads the public to believe the provider holds that specific license." But for an appellate court to consider evidence on an appeal from a summary judgment order, the evidence must have been "called to the attention of the trial court." RAP 9.12. Hosseinzadeh's citation to a website in his reply brief is insufficient for our consideration under RAP 9.12. See Gartner, Inc., v. Dep't of Revenue, 11 Wn. App. 2d 765, 776-77, 455 P.3d 1179 (2020) (striking reference to website in appellate brief where party had not provided documentation of evidence contained on website). The summary judgment evidence does not establish a question of fact regarding public interest impact, as required for a CPA claim.

Hosseinzadeh also does not provide evidence of the fourth element, which requires the party to make a specific showing of injury caused by the defendant's acts. Hangman Ridge, 105 Wn.2d at 792. Hosseinzadeh claims that under the CPA, he was not required to "detail his property or business" that was injured and that his damages do not need to be quantifiable. It is true that *injury* (not damages) need not be quantifiable; the distinction between injury and damages

15

"makes it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice." Sign-O-Lite Signs, Inc., v. DeLaurenti Florists, Inc., 64 Wn. App. 553, 563, 825 P.2d 714 (1992) (quoting Nordstrom, Inc., v. Tampourlos, 107 Wn.2d 735, 740, 733 P.2d 208 (1987)). Hosseinzadeh relies on Michael v. Mosquera-Lacy for the proposition that "[w]hen a misrepresentation causes inconvenience that deprives the claimant of the use and enjoyment of his property, the injury element is satisfied." 140 Wn. App. 139, 148-49, 165 P.3d 43 (2007), rev'd, 165 Wn.2d 595, 200 P.3d 695 (2009). But Michael does not change the requirement that "[t]here must be some evidence, however slight, to show injury to the claimants' business or property." Sign-O-Lite, 64 Wn. App. at 563. For example, in Sign-O-Lite, the court concluded that the plaintiff provided evidence that she suffered injury to her florist business when she could not manage her store the way she typically would because she had to address issues with her contract with the defendant. Id. at 564. By contrast, here, Hosseinzadeh does not identify evidence that establishes that he suffered injury to his business or property. Though he need not quantify injury, he makes only conclusory statements in his complaint that he suffered injury,[10] and does not identify any evidence supporting these statements in his responsive summary judgment briefing.

The record evidence does not establish a genuine issue of material fact regarding the required elements of a public interest impact or an injury to

---

[10] For example, Hosseinzadeh states that "Swedish's . . . actions injured Plaintiff including, but not limi[ted] to injury to his health. Plaintiff's injury is directly and proximately caused by Defendant Swedish's misleading and [deceiving] actions."

16

Hosseinzadeh's business or property.[11] We affirm the trial court's decision to dismiss his CPA claim.

> D. Unlicensed Practice, Defamation, False Light, and Violation of Privacy Claims

Hosseinzadeh also challenges the dismissal of his claims of unlicensed practice, defamation, false light, and violation of privacy. On appeal, Hosseinzadeh assigned error to the trial court's summary judgment dismissal but failed to brief the dismissal of these claims in his opening brief, which focused on the medical malpractice and fraud claims. To the extent he provided briefing on these issues, it was only in his reply briefing and was conclusory. "Points not argued and discussed in the opening brief are deemed abandoned and are not open to consideration on their merits." In re Disciplinary Proceeding of Kennedy, 80 Wn.2d 222, 236, 492 P.2d 1364 (1972). We do not consider claims argued for the first time on reply. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, because Hosseinzadeh failed to adequately brief these additional tort claims in his opening brief, we do not consider these claims on the merits.

> II. Providers' Cross-Appeal of Denial of Attorney Fees and Expenses Below and Request for Fees and Costs on Appeal

Sidhu filed a cross-appeal, in which Choiniere and Swedish joined, claiming the trial court abused its discretion by denying Providers' request for

---

[11] Providers also argue that the second element, whether the deceptive act or practice occurred in trade or commerce, is not satisfied. And Hosseinzadeh asserts that the evidence he submitted to the trial court was sufficient to demonstrate the fifth element, causation, but does not identify specific evidence in support. We need not address either of these elements as we conclude his CPA claim fails on other grounds.

attorney fees and expenses against Hosseinzadeh for filing a frivolous action. They also seek an award of attorney fees and costs on appeal. We affirm the trial court's denial of fees. We deny the Providers fees on appeal but award them their costs.

A prevailing party in an action that has terminated can submit a motion to the trial court seeking a determination that the non-prevailing party's claim(s) were "frivolous and advanced without reasonable cause." RCW 4.84.185. The trial court shall then consider all evidence presented on the motion to determine whether the action was "frivolous and advanced without reasonable cause." RCW 4.84.185. If the trial court determines that the action was frivolous, then the court may, "upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action . . . ." RCW 4.84.185. An action is frivolous when it " 'cannot be supported by any rational argument on the law or facts.' " Alexander v. Sanford, 181 Wn. App. 135, 184, 325 P.3d 341 (2014) (quoting Rhinehart v. Seattle Times, 59 Wn. App. 332, 340, 798 P.2d 1155 (1990)). Notably, when determining if an action is frivolous, a court must consider it as a whole. Biggs v. Vail, 119 Wn.2d 129, 136, 830 P.2d 350 (1992). Further, the trial court has discretion to determine whether to award attorney fees for a frivolous lawsuit. Rhinehart, 59 Wn. App. 339-40. However, the frivolous lawsuit statute should not be used in place of other pretrial motions or sanctions. Biggs, 119 Wn.2d at 137.

18

We review trial court determinations regarding attorney fees and expenses under RCW 4.84.185 for an abuse of discretion. Alexander, 181 Wn. App. at 184. A trial court abuses its discretion when a determination is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting Associated Mortgage Investors v. G.P. Kent Constr. Co., 15 Wn. App. 223, 229, 548 P.2d 558 (1976)).

In Biggs, the trial court found three out of four of the plaintiff's claims to be frivolous and awarded attorney fees pursuant to RCW 4.85.185. 119 Wn.2d at 137. However, the Washington Supreme Court held that "the action *as a whole* cannot be deemed frivolous and attorneys' fees were therefore improperly granted," because the trial court did not find all of the plaintiff's claims to be frivolous. Id.

Here, Sidhu argues that the trial court abused its discretion by denying her motion for attorney fees and expenses under RCW 4.84.185 because all claims against her were dismissed on the merits based on their apparent frivolity and because such claims are "clearly prohibited by the plain language of the applicable statutes." Further, she posits that Hosseinzadeh brought this suit to "harass his former healthcare providers after their candid deposition testimony." But nothing in the record, including the trial court's order granting summary judgment, indicates that the claims were dismissed because they were frivolous and advanced without reasonable cause. The court did not make written findings to that effect, as required for an award of expenses under RCW 4.84.185.

Rather, the trial court's order indicates only that Hosseinzadeh's expert testimony was conclusory and failed to establish a standard of care as required for the medical malpractice claim and stated nothing specifically about the reason for dismissing the other claims. Because Providers fail to establish that the trial court abused its discretion in denying their request for attorney fees and expenses under RCW 4.84.185, we affirm the denial.

On appeal, a party can recover reasonable attorney fees or expenses when the party requests such fees in its opening brief. RAP 18.1(a). The party requesting fees must also "provide argument and citation to authority 'to advise the court of the appropriate grounds for an award of attorney fees as costs.' " Robinson v. Am. Legion Dep't of Wash., Inc., 11 Wn. App. 2d 274, 298, 452 P.3d 1254 (2019) (quoting Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012)).

Here, the only argument Providers offer for appellate attorney fees is "[i]t is equitable for Hosseinzadeh to bear the expenses of this needless and frivolous litigation that occurred during the trial court proceedings, and which are now being continued on appeal." Providers fail to provide argument and citation to any relevant authority to support their request for appellate attorney fees. Providers' request for appellate attorney fees is denied.

Providers also seek appellate costs pursuant to RAP 14.2. In general, the party that "substantially prevails on review" is awarded appellate costs unless the reviewing court instructs otherwise. RAP 14.2; John Doe v. Benton County, 200 Wn. App. 781, 793, 403 P.3d 861 (2017). On review, Providers are the

substantially prevailing parties, so we award them appellate costs pursuant to

RAP 14.2, subject to compliance with the applicable procedural requirements.

_Chung, J._

WE CONCUR:

_Birk, J._ _Smith, C.J._